IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BOBBY MICHAEL LEWIS                                                                          PLAINTIFF

VS.                                                            CIVIL ACTION NO. 3:14cv812-DPJ-FKB

CAROLYN W. COLVIN,
COMMISSIONER
OF SOCIAL SECURITY                                                                        DEFENDANT

## REPORT AND RECOMMENDATION

Bobby Michael Lewis, proceeding *pro se*, brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the decision be affirmed.

### I. Procedural History

Lewis was born on May 16, 1962, and was 51 years of age at the time of the decision of the ALJ. He has a GED and past relevant work experience as a satellite dish installer and security installer. Lewis filed for disability insurance benefits and supplemental security income on May 4, 2011, alleging disability beginning January 15, 2006, due to a cervical fusion and arthritis. His applications were denied initially and on reconsideration. He requested and was granted a hearing before an administrative law judge (ALJ). The ALJ issued a decision finding that Lewis is not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner. Lewis then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. <u>Evidence Before the ALJ</u>

The medical record, although not brief, is straightforward.  It consists primarily of treatment notes dating back to 2006 from NewSouth NeuroSpine.  In March of 2007, Lewis underwent a cervical fusion at C5-C7 for cervical spondylosis and a herniated disc after conservative treatment of his pain had been unsuccessful.  His recovery was uncomplicated. Since the surgery, he has continued to suffer from neck pain. Examinations by Dr. Michael Winkelmann and other medical professionals at NewSouth NeuroSpine have routinely revealed decreased range of motion in the cervical spine, paraspinal tenderness with spasms, tenderness with spasms of the superior trapezius muscles, pain with facet loading, and intermittent numbness in the left arm and hand. Initially, Lewis's pain was treated with Lorcet and Duragesic patches; however, when Lewis developed an allergic reaction to the overlay patches in June of 2010, the Duragesic was replaced with OxyContin.  Since that time he has continued this regimen of Lorcet and OxyContin for pain, along with Flexeril, which appears to have been added in September of 2012.  In addition to oral medication, he has been treated with occasional trigger point injections.   Progress notes indicate that Lewis has consistently denied any side effects, such as sedation, from his medication

An MRI in October 2011 revealed a stable fusion at C5-C7, mild degenerative disc bulge at C4-C5, and mild right foraminal narrowing.  R. 270-71, [5] at 274-75.  A subsequent MRI in December of 2012 showed no significant changes.  R. 272, [5] at 276. In February of 2012 and December of 2012, Lewis underwent periodic facet injections to help manage his pain.  Progress notes from January 2013 and March 2013, the most

2

recent evaluations prior to the ALJ's decision, indicate that Lewis was doing well overall and that his medications were managing his pain. R. 422, 518, [5] at 426, 522. At these visits, Lewis rated his current pain levels at three and five, respectively. *Id.*

Lewis suffers from mild carpal tunnel syndrome and low testosterone, the latter secondary to chronic pain and chronic narcotic use. His low testosterone levels are treated with weekly testosterone injections. He also takes Abilify and Effexor for depression and Ambien for sleeplessness.

The record contains two functional capacity evaluations. The first was performed on July 28, 2008, by Julie Walker, an occupational therapist. Ms. Walker stated that Lewis could lift and carry 50 pounds and that he had no limitations on climbing, sitting, standing, or walking. R. 385, [5] at 389. She identified Lewis's limitations as decreased cervical range of motion and decreased sensation in all of his fingers. *Id.* Ms. Walker stated that Lewis should be limited to only occasional overhead work. *Id.*

In an undated evaluation, Dr. Winkelmann opined that Lewis could lift and carry 50 pounds occasionally; that he could push/pull 20 pounds occasionally; that he had no limitations on standing and sitting or on handling and fingering; that he could occasionally bend, crawl, squat, stoop, twist, climb, and kneel; that he could perform repetitive motions less than 30 minutes a day; and that he should avoid working overhead. R. 408-15, [5] at 412-19. Dr. Winkelmann also observed that OxyContin could cause sedation, which would limit Lewis's ability to operate heavy machinery or power tools. *Id.*

At the hearing, Lewis testified that he suffers from pain in his neck and shoulders. R. 37, [5] at 41. He stated that he has good days and bad days. R. 39, [5] at 43. On a

bad day, he suffers from severe pain and is limited to lying on the floor flat on his back and watching television. *Id.* On a good day, he will do some yard work or housekeeping. *Id.* Lewis testified that he can do household chores, drive, walk, and ride a bicycle. R. 39-40, [5] at 43-44. When questioned as to why he cannot work, Lewis responded that he has more bad days than good ones and that the sedative effects of his medications and slowed reactions prevent him from being hired by anyone. R. 42, [5] at 46. When questioned about his ability to concentrate, Lewis responded that his short-term memory is poor. R. 45, [5] at 49.

Also testifying at the hearing was Catherine Smith, a vocational expert (VE). Ms. Smith testified that Plaintiff's past relevant work as a satellite dish installer is classified as skilled work at the heavy exertional level. R. 52, [5] at 56. According to Smith, Lewis's past work as a security installer is skilled work and is classified at the medium exertional level but that it constituted heavy work as it was actually performed by Lewis. *Id.*

The ALJ posed two hypotheticals to the VE. In the first, he described the following: A person of Lewis's age, vocational training, and work history, who could lift and carry 50 pounds occasionally and 25 pounds frequently, who could stand, walk, and sit six hours a day, who could occasionally do overhead work, stoop, kneel, crouch, crawl, climb, and balance, and who could not operate heavy machinery or power tools or ride on vibrating equipment. R. 52, [5] at 56. The VE testified that such a person could not perform Lewis's past work but could perform the alternate jobs of assembler, kitchen helper, and binder. R. 53, [5] at 57. In the second hypothetical, the ALJ described an individual with the same characteristics as in the first hypothetical, except that he could lift and carry only

20 pounds occasionally and 10 pounds frequently and would be limited to simple, repetitive tasks. *Id.* The VE responded that the individual could perform the jobs of cashier, fast food worker, and sales associate. R. 53-54, [5] at 57-58.

Lewis's attorney questioned the VE about further limitations, asking whether any work would be available for such a person who was limited to less than thirty minutes a day of repetitive motion. R. 55, [5] at 59. The VE responded that this limitation would eliminate the jobs of assembler, kitchen helper, and binder, but that it would not eliminate the jobs of cashier and fast food worker. R. 56-57, [5] at 60-61.

### III. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Lewis has the severe impairments of status post

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the

cervical fusion and discectomy. R. 13, [5] at 17. He carefully considered Lewis's depression and concluded that it was non-severe. R. 13-14, [5] at 17-18. He also noted that no treatment had been required for Lewis's mild carpal tunnel syndrome and concluded that it was not a severe impairment. R. 14, [5] at 18. At step three, the ALJ determined that Lewis does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14, [5] at 18. The ALJ found that Lewis has the residual functional capacity to perform a limited range of medium work as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c), specifically, that he can lift and carry 50 pounds occasionally and 25 pounds frequently; that he can stand, walk, and sit for six hours a day; that he can occasionally stoop, kneel, crouch, crawl, climb, balance, and do overhead work; and that he should not operate heavy machinery or power tools or ride on vibrating equipment or machines. R. 14-17, [5] at 18-21. He considered Lewis's subjective allegations of pain and limitations but found that they were not fully credible in light of the medical evidence, including the opinion of Dr. Winkelmann. R. 17, [5] at 21. The ALJ specifically noted the absence of evidence of cervical radiculopathy. *Id.* At step four, the ALJ found, based upon the testimony of the VE, that there are jobs that Lewis is capable of performing. R. 19, [5] at 23. He therefore determined that Lewis is not disabled. *Id.*

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and

---

claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] Lewis has made no specific allegation of a lack of substantial evidence or any error by the ALJ. Nevertheless, the undersigned has carefully reviewed the entire record and concludes that there is no basis for reversal or remand. The medical record is without conflicts or inconsistencies, and Lewis's treatment notes and the opinion of Lewis's treating physician provide substantial evidence for the ALJ's finding that Lewis is capable of performing a limited range of medium work. Moreover, the ALJ adequately explained his findings as to Lewis's subjective complaints.

## IV. Conclusion

The undersigned concludes that the Commissioner's decision was based upon substantial evidence and that no reversible errors were made. Accordingly, the undersigned recommends that the decision be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 12th day of February, 2016.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE